FILED IN
COURT OF CRIMINAL APPEALS

March 6, 2015

ABEL ACOSTA, CLERK

AP-77,055
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/6/2015 1:27:13 PM
Accepted 3/6/2015 1:29:37 PM
ABEL ACOSTA
CLERK

No. AP 77,055

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

THE STATE OF TEXAS,

Appellee,

vs.

RANDALL WAYNE MAYS,

Appellant,

ON APPEAL FROM THE DENIAL BY 392ND DISTRICT COURT OF HENDERSON COUNTY OF MAY'S MOTION RE COMPETENCY TO BE EXECUTED (CODE OF CRIMINAL PROCEDURE ARTICLE 46.05) AND REQUEST FOR STAY OF EXECUTION

APELLEE'S (STATE'S RESPONSE) BRIEF

R. Scott McKee
District Attorney,
173rd Judicial District
Henderson County, Texas
109 W. Corsicana Street, Ste. 103
Athens, Texas 75751
Phone (903) 675-6100
Facsimile (903) 675-6196
State Bar No. 24044144
smckee@co.henderson.tx.us
Attorney for State

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................3

INDEX OF AUTHORITIES ........................................................................4

ISSUES PRESENTED ...............................................................................6

STATEMENT OF THE CASE .....................................................................8

ARGUMENT...........................................................................................9

APPELLANT'S ISSUE PRESENTED NO. 1 .................................................9

APPELLANT'S ISSUE PRESENTED NO. 2 ...............................................27

CONCLUSION.......................................................................................30

PRAYER...............................................................................................31

CERTIFICATE OF SERVICE ...................................................................32

CERTIFICATE OF COMPLIANCE.............................................................33

## IDENTITY OF PARTIES AND COUNSEL

Judge Presiding:

Honorable Carter Tarrance, Presiding Judge, 392nd District Court, Athens, Henderson County, Texas

Appellant/Defendant:

Randall Wayne Mays

Attorney for Appellant:

Brad Levenson
Office of Capital Writs
1700 North Congress, suite 460
Austin, Texas 78701

Appellee:

The State of Texas

Attorney for Appellee:

Hon. R. Scott McKee, District Attorney, 173rd Judicial District Henderson County Judicial Complex 109 W. Corsicana St., Athens, Texas 75751

3

# INDEX OF AUTHORITIES

**Texas Statutes**

TEX. CODE. CRIM. PRO. art. 11.071.......................................................................22

TEX. CODE. CRIM. PRO. art. 46.05............................................................... passim

TEX. CODE. CRIM. PRO. art. 46B.003.......................................................................25

**Constitutional Provisions**

U.S. Const. amend. VIII ...................................................................18, 27, 29, 30

U.S. Const. amend. XIV. ..................................................................18, 27, 29, 30

**Federal Cases**

*Ford v. Wainwright*, 477 U.S. 399 (1986).......................................................16, 29

*Mays v. Director*, TCDJ-CID, 2013 WL 6677373 (E. Dist. Tex. 2013).................8

*Mays v. Stephens*, __S. Ct.__, 2015 WL 133144 (2015)...................................8

*Mays v. Stephens*, 757 F.3d 211 (5th Cir. 2014)...............................................8

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ...............................................17, 29

*Panetti v. Stephens*, 727 F.3d 398, 409–10 (5th Cir.013)..................................16

*Robinson v. California*, 370 U.S. 660 (1962) ....................................................27

*U.S. v. Nixon*, 418 U.S. 683 (1974) ...............................................................12

**State Cases**

*Druery v. State*, 412 S.W.3d 523 (Tex. Crim. App. 2013)............................ passim

*Ex parte Mays*, No. WR-75105-01, 2011 WL 1196799 (Tex. Crim. App. Mar. 16, 2011) (per curiam), *cert. denied*, 132 S. Ct. 453 (2011)..........................8, 24, 25

*Green v. State*, 374 S.W.3d 434 (Tex. Crim. App. 2013)............................. passim

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1977) *en banc*......................19

*Krause v. State*, 405 S.W.3d 82 (Tex. Crim. App. 2013)...............................15, 16

*Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 1606 (2011)................................................................................................8

*Mays v. State*, No. 75,924 (Tex. Crim. App. Sep. 23, 2010).................................8

*Panetti v. Dretke*, 401 F.Supp.2d 702, 705–06 (W.D.Tex.2004)...........................16

**Other State's Cases**

*Commonwealth v. Banks*, 29 A.3d 1129 (Pa.2011)...............................................13

*State v. Brooks*, 2011–Ohio–5877, at 15, 2011 WL 5517300 (Ohio Ct.App.2011) .................................................................................................................14

*State v. Irick*, 320 S.W.3d 284, 292 (Tenn. 2010) ..............................................13

No. AP 77,055

## IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

---

THE STATE OF TEXAS,

Appellee,

vs.

RANDALL WAYNE MAYS,

Appellant,

---

ON APPEAL FROM THE DENIAL BY 392ND DISTRICT COURT OF HENDERSON COUNTY OF MAY'S MOTION RE COMPETENCY TO BE EXECUTED (CODE OF CRIMINAL PROCEDURE ARTICLE 46.05) AND REQUEST FOR STAY OF EXECUTION

---

APELLEE'S (STATE'S RESPONSE) BRIEF

---

TO THE HONORABLE JUSTICES OF THE COURT OF

CRIMINAL APPEALS:

NOW COMES the State of Texas, acting by and through her District Attorney, and submits this reply to the Appellant's Brief.

5

# ISSUES PRESENTED

A. Mays's motion, attached documents and affidavits filed under Article 46.05 of the Texas Code of Criminal procedure did not raise "substantial" doubt of his competency to be executed. Therefore, the trial court did not err in finding that the Appellant had not met his threshold burden of "substantial doubt" of his competency to be executed under Article 46.05 of the Texas Code of Criminal Procedure. Furthermore, Appellant's statement of this Court's standard of review is incorrect.

    1. This Court's holding in *Druery* and the plain language of Art. 46.05(d) is ambiguous if it holds that the State's filing of a responsive brief would turn the proceeding into an "adversarial" proceeding.

    2. Appellant's reliance that *Druery* requires a *de novo* review at the threshold stage of a 46.05 motion is incorrect.

    3. This Court should review a trial court's denial of a competency-to-be-executed claim at the threshold stage under an Abuse of Discretion standard as long as the trial court applied the correct legal standard and followed the provisions of the statute.

    4. Should this court abandon the holding in *Green* and apply a *de novo* review of competency-to-be-executed claims, the trial court was in the best position of any court to review Appellant's Art. 46.05 Motion and did not err in evaluating Appellant's motion.

    5. The trial court's finding of "some" evidence, but not "substantial" evidence was correct considering the facts supplied in Appellant's motion challenging his competency because they are not reliable and irrelevant as to the Appellant's competency to be executed at this time.

## ISSUES PRESENTED (Continued)

B. The execution of Randall Mays without appointing experts to evaluate him for competency to be executed would not violate his rights under the Eighth and Fourteenth amendments to the Constitution because the trial court applied the correct standard of "substantial doubt" and correctly followed the procedures outlined in Art. 46.05. Furthermore, no court has found constitutional infirmities lurking within Art. 46.05.

1. Article 46.05 is constitutionally adequate under *Ford v. Wainwright* and *Panetti v. Quarterman*.

2. The execution of Appellant without appointing two experts and a judicial review of the expert's findings, would not violate his Constitutional rights as long as the trial court followed the provisions required of Art. 46.05 and applied the correct "substantial doubt" standard.

## STATEMENT OF THE CASE

On May 13th, 2008, the Appellant, Randall Mays, was sentenced to death after being convicted of Capital Murder of a Peace Officer in Cause Number B-15,717 in the 392nd District Court sitting for the 173rd Judicial District Court of Henderson County, Texas.

On April 28th, 2010, the Court of Criminal Appeals affirmed the Defendant's conviction. *Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 1606 (2011). After automatic review, this Court issued its mandate on September 23rd, 2010. *Mays v. State*, No. 75,924 (Tex. Crim. App. Sep. 23, 2010) The Defendant's State Habeas Application was denied and the trial court's Findings of Fact and Conclusions of Law was adopted by this by this Court on March 16th, 2011. *Ex parte Mays*, No. WR-75105-01, 2011 WL 1196799 (Tex. Crim. App. Mar. 16, 2011) (per curiam), *cert. denied*, 132 S. Ct. 453 (2011).

Mays's federal petition for writ of habeas corpus was denied by the Eastern District of Texas on December 18, 2013. *Mays v. Director*, TCDJ-CID, 2013 WL 6677373 (E. Dist. Tex. 2013) The Fifth Circuit Court of Appeals denied his petition on June 27, 2014. *Mays v. Stephens*, 757 F.3d 211 (5th Cir. 2014). The United States Supreme Court denied his petition for writ of *certiorari* from the Fifth Circuit on January 12, 2015. *Mays v. Stephens*, __S. Ct.__, 2015 WL 133144 (2015).

Mays is scheduled to be executed on March 18, 2015. Mays filed a motion in the 392nd District Court on February 24th, 2015 challenging his competency to be executed. *See* Tex. Code. Crim. Pro. Art. 46.05. The State filed a responsive pleading on February 25th, 2015. *See Id.* at Art. 46.05(d). On February 27th, 2015, the trial court, after considering the Appellant's motion, attached documents and affidavits, and the State's response brief, held that Mays had raised "some" doubt but not a "substantial" doubt as to his competency to be executed. R.R., 46.05 Hearing at 19.

## ARGUMENT

### Appellant's Issue Presented No. 1

Appellant's motion, attached documents and affidavits filed under Article 46.05 of the Texas Code of Criminal procedure did not raise "substantial" doubt of his competency to be executed. Therefore, the trial court did not err in finding that the Appellant had not met his threshold burden of "substantial doubt" of his competency to be executed under Article 46.05 of the Texas Code of Criminal Procedure. Furthermore, Appellant's statement of this Court's standard of review is incorrect.

1. **This Court's holding in Druery and the plain language of Article 46.05(d), Texas CCP is ambiguous if it holds that the State's filing of a responsive brief would turn the proceeding into an "adversarial" proceeding.**

Although Article 46.05 does not contemplate an adversarial hearing at the threshold stage of the proceeding, the trial court shall still consider the State's

9

pleading which includes previously adjudicated issues material to the defendant's competency. Tex. Code. Crim. Pro. Art. 46.05(d).

In his 46.05 motion, the Appellant asserted that he would meet his threshold burden if evidence presented by the State would require the trial court to resolve material factual disputes regarding the defendant's competency. Def's 46.05 Motion at 9, citing *Druery v. State*, 412 S.W.3d 523 (Tex. Crim. App. 2013).

At first glance, this Court's holding in *Druery* is ambiguous when compared with the plain language of Art. 46.05(d). The statute clearly states that the trial court "... shall determine whether the defendant has raised a substantial doubt of the defendant's competency to be executed on the basis of the motion, any attached documents, **and any responsive pleadings**; ...". Tex. Code. Crim. Pro. Art. 46.05(d) (emphasis added).

A rational explanation in resolving the apparent ambiguity between the holding in *Druery* when compared with the plain language of the statute would be that the State can, without offering "additional" evidence, attack the credibility, reliability and relevance of the evidence in the defendant's pleadings, challenge jurisdiction, procedural errors or bars, and point out previously adjudicated facts and legal conclusions relevant to the defendant's competency.

In light of the holding in *Druery*, and by authority of the plain language of the statute, the State, in her responsive pleading, challenged the credibility,

reliability and relevance of the Appellant's evidence in his pleading, and pointed out the relevant and material previously adjudicated facts and legal conclusions of law relevant to the his competency.

Based on the record made at the Art. 46.05 hearing and the trial court's ruling, it is clear that the judge considered the State's responsive pleading:

> MR. MCKEE: State's present and ready.
>
> THE COURT: -- to respond -- responsive pleadings?
>
> MR. MCKEE: Yes, sir. And we have filed a responsive pleading.
>
> THE COURT: Yes. And the Court has read both of your -- the motion and the response.

R.R., 46.05 Hearing at 4[1].

> THE COURT: Very well. Thank you.
>
> Okay. I've read the briefs. I've heard arguments. I'm going to take about a five-minute recess. I'll come back in court in five minutes and give you my ruling.

R.R., 46.05 Hearing at 18.

Furthermore, the State, in explaining the apparent ambiguity between Art. 46.05 and the holding in *Druery* at the threshold hearing, thoroughly reiterated the argument it made in its responsive pleadings about how the court should resolve the ambiguity. R.R., 46.05 Hearing at 10-12.

By requiring the trial court to consider the State's responsive pleadings in plain and unambiguous text, the statute must contemplate that the State would

---

[1] Refers to Reporter's Record of the trial court's hearing on Appellant's Art. 46.05 motion.

11

"respond" (as an adversary) to the motion, documents and any affidavits contained in the defendant's motion.

The adversarial system of jurisprudence is fundamental to our systems of criminal and civil justice. Every lawyer in America is taught this basic adversarial system in a Socratic teaching methodology beginning day one of law school. Although fundamental and known by all in the legal profession, the U.S. Supreme Court articulated this adversarial concept in *U.S. v. Nixon*, 418 U.S. 683 (1974).

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*Id.* at 708

Allowing the State to file, and requiring a judge to consider, a responsive pleading most certainly presumes an "adversarial" response. Naturally, this responsive pleading in an Art. 46.05 threshold proceeding would, without offering "additional" evidence, attack the credibility, reliability and relevance of the evidence in the defendant's pleadings, challenge jurisdiction, procedural errors or bars, and point out previously adjudicated facts and legal conclusions relevant to the defendant's competency.

12

To interpret *Dreary* to mean that the mere filing of an "adversarial" responsive pleading by the State at the threshold stage would turn the proceeding into an adversarial proceeding would directly contradict the plain meaning of the statute and deny the State its due process in the pursuit of justice.

## 2. Appellant's reliance that *Druery* requires a *de novo* review at the threshold stage of an Art. 46.05 motion is incorrect.

In his brief, Appellant asserts that the Standard of Review of a denial of a Defendant's competency to be executed is a *de novo* review. Appellant's Brief at 1. To support this assertion, Appellant cites this Court's holding in *Druery*, 412 S.W.3d at 535. The State believes Appellant's interpretation of *Druery* is incorrect.

We do not believe *Druery* holds that a trial court's determination that Appellant failed to make a "substantial showing" is subject to *de novo* review. Instead, *Druery* holds that **what constitutes** a "substantial showing" is subject to *de novo* review. Although these two separate inquiries may seem subtle. Their differences are considerable and other precedent holds that a review of a trial court's determination of competency-to-be-executed is reviewed under an abuse of discretion standard[2].

---

[2] *See, e.g., Green v. State*, 374 S.W.3d 434 (Tex. Crim. App. 2013); ("In accordance with the opinions of the federal courts, other state courts, and our own guidelines as to standards of review, we believe that the appropriate standard to review a trial court's finding of a defendant's competency to be executed is whether the trial court abused its discretion. We shall reverse the judgment only if it is outside the zone of reasonable disagreement."); *State v. Irick*, 320 S.W.3d 284, 292 (Tenn. 2010) ( "[T]he trial court's finding on the issue of competency is reviewed as a question of fact and presumed correct unless the evidence in the record preponderates against the finding."); *Commonwealth v. Banks*, 29 A.3d 1129 (Pa.2011) ("this Court reviews the trial court's findings [as to whether the defendant is competent to be executed] for an abuse of discretion");

In *Druery*, this Court had to resolve an internal ambiguity within Art. 46.05[3], and determine the proper legal standard to be applied at the trial court level at the threshold stage of a 46.05 motion. *Id.* at 536-41.

The State agrees that on its face, without a careful reading and parsing of the language within the holding, *Druery* seems to indicate that the standard of review of a trial court's determination at the threshold stage of an Art. 46.05 motion is a *de novo* review. However, a careful reading of the holding, precedent in other cases, and in consideration of the factual background of the trial court's behavior prior to this Court's review in *Druery*, indicates otherwise.

In order to fully articulate the State's argument that the correct standard of review is an "abuse of discretion review" at the threshold stage, we first must look carefully at the language within *Druery*.

First, after narrating the extensive background of the State's, Appellant's and the trial court's actions and procedures used in evaluating *Druery's* 46.05 motion, this Court, in Section III., undertook a statutory construction review of Art. 46.05 to determine whether it could even review the trial court's denial of a competency-to-be executed claim at the threshold stage. In doing so, the Court

*State v. Brooks*, 2011–Ohio–5877, at 15, 2011 WL 5517300 (Ohio Ct.App.2011) ("The fundamental question of whether the trial court properly denied Brooks's petition for post-conviction relief by finding him competent to be executed is reviewed under an abuse of discretion standard.").

[3] Article 46.05 (l) is ambiguous in that it states "Following the trial court's determination under **Subsection (k)** and on motion of a party, the clerk shall send immediately to the court of criminal appeals ... the appropriate documents for that court's review and entry of a judgment of whether to adopt the trial court's order, findings, or recommendations issued under **Subsection (g) or (k).**" (emphasis added).

had to conduct a thorough statutory analysis of the pre-2007[4] Art. 46.05 and the current revision of Art. 46.05 due to the internal ambiguity within the statute. *Id.* at 533.

As *Druery* correctly holds, "statutory construction is a question of law subject to *de novo* review". *Id.* at 533, (*citing Krause v. State*, 405 S.W.3d 82, 85 (Tex. Crim. App. 2013)).

After its review, this Court held that Article 46.05 does provide for appellate review of a trial judge's determination that Appellant has failed to make a substantial showing of incompetency. *Druery*, 412 S.W.3d at 535.

Next, the heading of Section V. is styled as follows: "Standard of review applicable to a determination that Appellant failed to make a substantial showing and what constitutes a substantial showing." *Id.* at 536.

The heading of Section V. seems to indicate that the Court would make two determinations:

> 1. Evaluate and determine the review applicable to a determination that Appellant failed to make a "substantial showing"; and

> 2. Determine what constitutes a substantial showing.

The Court begins its analysis with the second question.

---

[4] The bill analyses consistently describe the 2007 change as equalizing the review process to allow either party to appeal a trial court's determination regarding competency. *See* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007); HOUSE CRIMINAL JURISPRUDENCE COMM., BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007); SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007). *Druery*, S.W.3d at 535.

15

The question of **what constitutes a "substantial showing"** of incompetency is a legal question, subject to *de novo* review. *See Panetti v. Stephens*, 727 F.3d 398, 409–10 (5th Cir.013) (whether lower court applied correct standard in assessing competency is a legal question to be reviewed *de novo*); *see also Krause*, 405 S.W.3d at 85 (statutory construction is a question of law subject to *de novo* review). Further, if the trial court did not comply with Article 46.05 or violated due process, we will review its determination *de novo. See, e.g., Panetti v. Dretke*, 401 F.Supp.2d 702, 705–06 (W.D.Tex.2004) (declining to defer to state trial court's determination regarding competency when state-court proceedings did not comply with Article 46.05 and violated due process by failing to give petitioner opportunity to present as well as rebut evidence; "*Ford* [5], as a matter of due process, demands a *de novo* review of the petitioner's competency to be executed.").

*Id.* at 536-537 (emphasis added).

In continuing its determination **of what constitutes a substantial showing,** the Court next considered federal constitutional considerations, analogous threshold determinations, the language and structure of Article 46.05, and other jurisdictions treatment of competency-to-be executed claims at the threshold stage. *Id.* at 537-541.

After conducting this *de novo* review and evaluation of **what constitutes a substantial showing,** this Court ultimately held "

> ... that a "substantial showing" is more than "some evidence" but less than a preponderance. Further, if the trial court must resolve material factual disputes in making the threshold competency-to-be-executed determination, then the defendant has made a "substantial showing" of incompetency, triggering additional process under Article 46.05(f) and other subsections.

*Id.* at 541.

---

[5] *Ford v. Wainwright*, 477 U.S. 399 (1986).

After determining what constitutes a substantial showing, in other words, defining "substantial showing" as more than some evidence but less than a preponderance, the Court did not return to their first stated question in the heading of Section V.: "Evaluate and determine the review applicable to a determination that Appellant failed to make a "substantial showing". Instead, without identifying the standard of review applicable in the first question, it proceeded to Section VI. "[w]hether Appellant made a "substantial-showing"". *Id.*

The Court beings this section with the following language "[h]aving determined the appropriate appellate and trial court standards, we now decide whether the trial court erred in ruling that Appellant failed to make a substantial showing of incompetency to be executed." *Id.* at 541.

After reciting the Appellant's factual understanding and his mental illness, and comparing his condition and position to that of other death row inmates in *Green* and *Panetti v. Quarterman*, 551 U.S. 930 (2007), the court concluded in Section VI. that:

> Appellant's competency motion, supplement, and attachments made a "substantial showing" of incompetency under Article 46.05(f) because they presented sufficient credible evidence that Appellant is incompetent to be executed. The trial court erred in weighing the credible evidence of Appellant's incompetency against credible evidence of his competency to determine that he had not made a "substantial showing" of incompetency.

*Id.* at 542.

Although the Court stated that it had determined the appropriate appellate and trial court standards, the Court never specifically stated what the standard of

17

review is on question #1 in Section V, *i.e.*, "evaluate and determine the review applicable to a determination that Appellant failed to make a "substantial showing". This is precisely the question before this Court. What is the standard of review of a trial court's denial of a competency-to-be-executed motion at the threshold stage?

If this Court followed its holding in *Green*, then that review was an "abuse of discretion review. *See Green*, 374 S.W.3d at 441. (Holding that the appropriate standard to review a trial court's finding of a defendant's competency to be executed is whether the trial court abused its discretion.).

In the case at bar, there is no indication that the trial court applied the incorrect standard on the "substantial doubt" threshold, no indication that the trial court, or the resolved internal ambiguity in the statute denied Mays due process under the Eighth or Fourteenth Amendments, and no indication that the trial court erred in weighing the credible evidence of Appellant's incompetency against credible evidence of his competency to determine that he had not made a "substantial showing" of incompetency.

State and federal precedent holds that the correct standard to apply is an "abuse of discretion" standard.[6] Although Appellant may argue that his request for appellate review is from a denial at the threshold stage and therefore not analogous to the cases cited above, we would disagree.

---

[6] *See,* note 1.

18

**3. This Court should review a trial court's denial of a competency-to-be-executed claim at the threshold stage under an Abuse of Discretion standard as long as the trial court applied the correct legal standard and followed the provisions of the statute.**

Although the State (in an effort to not turn the proceeding into an "adversarial" proceeding as contemplated by *Druery*), did not present any evidence to rebut the facts in Appellant's motion, affidavits or letters, it did argue that the facts in the motion did not substantiate a finding of substantial doubt, and argued that the evidence was unreliable and not relevant. R.R., 46.05 Hearing at 13-15.

"As a general rule, the appellate courts, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Green,* 374 S.W.3d at 441 (*citing Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1977) *en banc.*

"The appellate courts should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.*

"The appropriate standard to review a trial court's finding of a defendant's competency to be executed is whether the trial court abused its discretion. We shall reverse the judgment only if it is outside the zone of reasonable

19

disagreement. We shall sustain the trial court's ruling if it is supported by the record and is correct on any theory of law." *Id.*

Most persuasive, is that this Court in *Green* held "... that a trial court's competency determination is, if not wholly a factual determination, at least a mixed question of law and fact based on credibility and demeanor. This conclusion would necessitate a highly deferential standard of review." *Id.*

Although the State (in an effort to not turn the proceeding into an "adversarial" proceeding as contemplated by *Druery*), did not present any evidence to rebut the facts in Appellant's motion, affidavits or letters, it did argue that the facts did not substantiate a finding of substantial doubt, and argued that the evidence was unreliable and not relevant. *See generally*, State's Argument, R.R. 46.05 Motion. The trial court in this case had to apply law to facts.

Armed with the correct standard to apply at the threshold stage and the correct legal definition of substantial doubt, the trial court had to apply this standard and definition to the facts set forth in Appellant's motion and the previous proceedings challenging the defendant's competency.

It is very clear from the record, that the trial court applied the correct standard:

> THE COURT: Should Mr. Mays be evaluated for competency to be executed based upon his history of mental illness and the likelihood that, based upon the expert affidavits that he may be incompetent? If the standard to be applied by the

20

Court is an "ought to be" or a "should be" or "any" doubt standard, then the Court should vacate the execution order and order a mental health or order mental health experts to examine Mr. Mays and report back to this Court and the Court conduct a competency hearing.

The law sets a threshold that before the defendant can be evaluated, the defendant must raise a substantial doubt of the defendant's present competency to be executed. The Court has read the defendant's motion and finds that there is some doubt -- some doubt is raised in the mind of a reasonable man, but substantial doubt was not raised.

R.R., 46.05 Hearing at 19.

Based on the trial court's correct interpretation of "substantial doubt' and the application of substantial doubt to the facts, this Court, in following its precedent in *Green*, should give great deference to the trial court's ruling unless it falls outside the zone of reasonable disagreement.

It is also worth noting that the trial court in *Druery* did not have the benefit of a published opinion from this Court that so thoroughly and succinctly set out the appropriate standard of "substantial doubt"; and, had not resolved the ambiguity issues within the statute. *See generally*, *Green*, 374 S.W.3d 434.

4. **Should this court abandon the holding in *Green* and apply a *de novo* review of competency-to-be-executed claims, the trial court was in the best position of any court to review Appellant's 46.05 Motion and did not err in evaluating Appellant's motion.**

21

This trial court was in the best position of any court to review the Appellant's Art. 46.05 motion. The Appellant's 46.05 motion was not the first time this trial court judge conducted a judicial review of the Appellant's competency. During this initial stage of the competency to be executed proceedings, the trial court must take notice of its prior judicial review.

Any motion under Art. 46.05 "shall identify any previous proceedings in which the defendant challenged the defendant's competency in relation to the conviction and sentence in question, including any challenge to the defendant's competency to be executed, competency to stand trial, or sanity at the time of the offense." TEX. CODE. CRIM. Pro. art. 46.05(c).

Identifying these previous proceedings is specifically included in the statute. This Court can reasonably conclude that one of the reasons the statute requires this history, is so the trial court may consider them in reviewing the merits of the claim.

Mays raised nine allegations in in his state habeas 11.071[7] writ filed on May 3rd, 2010. Def's 11.071 writ. In his second allegation, Mays claimed that trial counsel[8] rendered ineffective assistance because counsel did not request a competency hearing. *Id.* The trial court held an evidentiary hearing on his writ on September 28th, 2010. During the hearing, the trial court heard testimony from his trial counsel. After testimony, it was clear that Mims, who at the time had represented thirty-one Capital Murder defendants and tried nine or ten of

---

[7] TEX. CODE. CRIM. Pro. art. 11.071.
[8] Bobby Mimms, 1st Chair, Steve Green, 2nd Chair.

22

those to jury trial[9], did not believe that Mays was incompetent. In Mims own words from the hearing during direct examination concerning May's actual competence:

> I didn't question at least for the times we were in trial preparations that he did not understand what a normal person that would be in his circumstances would [have] understood. I think he understood we were trying to help him. I do think that at some point in there his mental health issue would sort of invade our ability to help him, but it wasn't consistent. It was episodic.
>
> * * *
>
> It's like I said earlier, we didn't feel like as far as the competence goes, we didn't feel like he was incompetent to the extent he could [not] assist his attorneys. It's like I said, he would become non[-]cooperative at points in the representation but at other points in time he was very clear, [and] courteous[.] I suppose he had some—this mental illness that I believe he has and persists would become problematic for us in preparation, but it wasn't overwhelming. That's why we didn't open it up.

2 SHRR 23–28[10].

On cross–examination, Mims agreed that despite some problems with Mays (i.e., cooperation and trust), Mays understood the charges, the possible consequences, and the roles everyone played in the proceedings—in other words, "the sorts of things that in order to be competent a person must at least understand." *Id.* at 55.

---

[9] Of those, only two received the death penalty.
[10] "SHHR" refers to State Habeas Reporter's Record.

23

The trial Court found Mims's testimony credible, as evidenced by its factual findings and conclusions of law. FOF & COC, State Habeas[11]. Furthermore, Dr. Mayfield, Mays's mental health expert during state habeas proceedings—like Mays's mental health experts at trial—never suggested that he had been incompetent to stand trial. *See* SHRR.

After the hearing, the trial court entered findings of fact and conclusion of law on all nine allegations on December 3rd, 2010. FOF & COC, State Habeas.

With respect to May's second allegation, the allegations that his trial team was ineffective for not raising the competency issues, the trial court entered six findings of fact:

> No. 1: Mims believed at the time of trial applicant was not incompetent, and that Applicant was able to assist counsel in his defense and understood the proceedings against him.
>
> No. 4: No medical expert has ever determined Applicant to be incompetent to stand trial, including Applicant's post-conviction expert, Dr. Joan Mayfield.
>
> No. 6: Applicant has failed to demonstrate by a preponderance of the evidence that he did not have sufficient ability at the time of trial to consult with his counsel with a reasonable degree of rational understanding.
>
> No.7: Applicant has failed to demonstrate by a preponderance of the evidence that he did not have a rational, as well as a factual, understanding of the proceedings against him.
>
> *Id.*

---

[11] Trial Court's Findings of Fact and Conclusions of law adopted by this Court in *Ex parte Mays*, No. WR-75105-01, 2011 WL 1196799, *1 (Tex. Crim. App. Mar. 16, 2011).

In the trial court's conclusions of law, it held in paragraph eight that Applicant was competent to stand trial under Tex. Code. Crim. Pro. Art. 46B.003. *Id.*

This Court adopted the trial court's findings and conclusions in their entirety, additionally concluded that Mays's first claim was procedurally barred, and denied relief. *Ex parte Mays, No.* WR-75105-01, 2011 WL 1196799, *1 (Tex. Crim. App. Mar. 16, 2011).

Assuming *arguendo* that this Court departs from its holding in *Green* and holds that the correct appellate review standard is *de novo*, the trial court judge, who has been intimately familiar with the entire case for eight years, from appointment of trial counsel, appointment of experts, jury trial and State Habeas proceedings, was in the best position to adjudicate this Art. 46.05 motion. Moreover, Mays's trial attorney, Bobby Mimms, had extensive capital murder expertise, and did not believe Mays was incompetent at the time of trial.

Furthermore, unlike the facts in *Druery*, the trial court applied the correct standard of substantial doubt, did not deprive Appellant of due process by requiring him to file his Art. 46.05 motion before he was ready, and did not weigh credible evidence of Appellant's incompetency against credible evidence of his competency to determine that he had not made a "substantial showing" of incompetency.

**5.** **The trial court's finding of "some" evidence, but not "substantial" evidence was correct considering the facts supplied in Appellant's motion challenging his competency because they are not reliable and irrelevant as to the Appellant's competency to be executed at this time.**

The Appellant asserts in brief as well as his motion and attached documents that he was involuntarily committed to Terrell State Hospital in 1983, readmitted in 1985, received treatment after his arrest in 2007, and was diagnosed with mental illness and treated after his arrest at the Smith County Jail. Applt's brief at 14-21[12]. He also asserts that three expert witnesses testified at his trial in 2008, that he was severely mentally ill and suffered from psychosis and other delusions, and that lay witnesses testified about his odd and irrational behaviors. *Id.* at 19-20. The Appellant also points to records and correspondence from UTMB/Polunsky during his incarceration. *Id.* at 20-21.

Finally, the Appellant asserts that even if the "evidence" above isn't sufficient, "two recent post-conviction experts agree that Mays should be evaluated for competency to be executed". *Id.* at 25-31.

After a review of all of this evidence in the Appellant's motion and brief to this Court, it is clear that not one of these "experts" has personally, during a one-on-one forum, inquired into or event spoke with the defendant about his current mental state. The Appellant argues in his brief and Art. 46.05 motion that these two experts have concluded that there are substantial doubts as to May's competency and even recommend that additional qualified experts be appointed by the court to conduct an "in-person" evaluation of Mays. *Id.*

---

[12] Appellant's brief.

Although this Court holds that a threshold showing can be met without the benefit of expert assistance if the Appellant's situation merits further investigation, *Druery*, 412 S.W.3d at 539, the Appellant, even with these two experts who did not evaluate or even speak with him, does not meet the threshold. There is simply no evidence that anyone, including these experts, has ever asked the Appellant if he understands that he is to be executed and that his execution is imminent. Nor is there any evidence that anyone has asked him if he understands that he is being executed for the capital murder of two peace officers. *See* TEX. CODE. CRIM. PRO. art. 46.05(h).

The Appellant would argue that this is precisely why the trial court should have appointed two independent experts. However, the statute and precedent clearly hold that the Appellant must make a substantial showing to meet his threshold burden. Simply guessing as to his competency is not enough.

## Appellant's Issue Presented No. 2

The execution of Randall Mays without appointing experts to evaluate him for competency to be executed would not violate his Constitutional rights under the Eighth and Fourteenth Amendments to the Constitution because the trial court applied the correct standard of "substantial doubt" and correctly followed the procedures outlined in Art. 46.05. Furthermore, no Court has found constitutional infirmities lurking within Art. 46.05.

1. **Article 46.05 is constitutionally adequate under *Ford v. Wainwright* and *Panetti v. Quarterman.***

In *Robinson v. California*, 370 U.S. 660 (1962), the Court ruled that the Eighth Amendment did apply to the states through the Fourteenth Amendment. Robinson was the first case in which the Supreme Court applied the Eighth Amendment against the state governments through the Fourteenth Amendment. Before *Robinson*, the Eighth Amendment had only been applied against the federal government. *Id.* at 667.

The State agrees with Appellant that the Eight Amendment applies to Texas through the Fourteenth Amendment.

In *Ford v. Wainwright*, 477 U.S 399 (1986), the seminal case in competency-to-be executed claims, the Supreme Court held that the Eighth Amendment prohibits the execution of a person who is incompetent. *Id.* at 409-10.[13]

The State agrees that *Ford* holds that the execution of individuals who are not competent to be executed is unconstitutional.

Although *Ford* did provide some guidance to the States, the application of *Ford* presents challenges because the Court did not define insanity or mandate procedures for States to follow in determining whether a defendant is not competent to be executed. *Green*, 374 S.W.3d at 442. The Court's *Ford* concurrence opinion was largely codified in Article 46.05 which was first enacted in 1999. *Id.* at 442.

---

[13] Because there was not a majority opinion in *Ford*, Justice Powell's concurrence became the controlling precedent and constitutes clearly established law.

In 2007, the United States Supreme Court revisited the issue of competency-to-be-executed in *Panetti v. Quarterman*, 551 U.S. 930 (2007). In *Panetti*, the Supreme Court held that the lower courts "unreasonably applied federal law clearly established by *Ford*," stating that the Court of Appeals standard was too restrictive under the Eighth Amendment. *Green*, 374 S.W.3d at 442 (citing *Panetti*, 551 U.S., at 956-57). In *Green*, this Court recognized that no relevant changes were made to Art. 46.05 after the *Panetti* decision and held that Art. 46.05 remains constitutionally adequate. *Id.* at 443.

2. **The execution of Mays without appointing two experts and a judicial review of the expert's findings, would not violate his Constitutional rights as long as the trial court followed the provisions required of Art. 46.05 and applied the correct "substantial doubt" standard.**

The Appellant's challenge to his competency to be executed was filed under Art. 46.05, Texas Code of Criminal Procedure. Since Art. 46.05 was largely a codification of *Ford* and is still constitutionally adequate under *Panetti*, his constitutional rights under the Eighth and Fourteenth Amendments would not be violated if two experts are not appointed to evaluate him for a judicial review of his competency.

As long as the trial court followed the procedures required of Art. 46.05 and applied the correct standard of "substantial doubt", Appellant's Constitutional rights have not been violated. It is very clear from the trial judge's findings on

29

the record[14], as cited *supra* in Appellee's Argument, that the trial court applied the correct standard:

There is simply no evidence that the trial court did not follow the proper procedures, nor does the Appellant assert so in his brief. Instead, Appellant complains that the he did meet the required showing of a threshold determination of "substantial doubt".

## CONCLUSION

This Court should apply an Abuse of Discretion Standard to the trial Court's denial of Appellant's Art. 46.05 motion. Furthermore, even if this Court departs from its holding in *Green* and applies a *de novo* review, the facts set forth in Appellant's motion, attached documents and affidavits did not raise "substantial" doubt of his competency to be executed.

The execution of Randall Mays without appointing experts to evaluate him for competency to be executed would not violate his Constitutional rights under the Eighth and Fourteenth Amendments to the Constitution because the trial court applied the correct standard of "substantial doubt" and correctly followed the procedures outlined in Art. 46.05. Furthermore, no Court has found constitutional infirmities lurking within Art. 46.05.

---

[14] R.R., 46.05 Hearing at 19.

## PRAYER

Wherefore premises considered, the State prays, for the reasons set forth in this brief, that this Court adopts the finding of the trial court's denial of Appellant's challenge to his competency to be executed **at any time after the hour of 6 P.M. on March 18th, 2015.**

Respectfully submitted,

R. Scott McKee
District Attorney, 173rd Judicial District
Henderson County Judicial Complex
109 W. Corsicana Street, Ste. 103
Athens, Texas 75751
Phone (903) 675-6100
Facsimile (903) 675-6196

State Bar No. 24044144

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served by emailing[15], faxing and placing same in the United States mail, postage prepaid, on this the 6th day of March, 2015.

Brad D. Levenson
Post-Conviction Attorney
Office of Capital Writs
Stephen F. Austin Building
1700 N. Congress Avenue, Suite 460
Austin, Texas 78701

Brad.Levenson@ocw.texas.gov

Fax: (512) 463-8590

Randall Wayne Mays
TDCJ # 999535
TDCJ Polunski Unit
3872 FM 350 South
Livingston, Texas 77531

Judge Carter Tarrance
392nd District Court
109 west Corsicana
Athens, Texas 75751 (by hand delivery)

R. Scott McKee
District Attorney,173rd Judicial
District, Henderson County, Texas

---

[15] Emailed and faxed to Attorney Levenson, not Mays

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), the undersigned attorney certifies this brief complies with the length requirements of the Texas Rules of Appellate Procedure in that the brief has 5,731 words, excluding the exempt portions.

This certification is executed on March 6th, 2015 in Athens, Texas.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

R. Scott McKee
District Attorney, 173rd Judicial District,
Henderson County, Texas